# No. 21-50368

# In the United States Court of Appeals for the Fifth Circuit

**KEVIN NICHOLS,**

Plaintiff-Appellant,

v.

**UNITED STATES OF AMERICA,**

Defendant-Appellee.

On Appeal from the United States District Court
for the Western District of Texas

**APPELLEE'S BRIEF FOR THE UNITED STATES**

Ashley Hoff,
United States Attorney

Kristina S. Baehr
Assistant United States Attorneys
Western District of Texas
903 San Jacinto, Suite 334
Austin, Texas 78701
(512) 370-1262
(512) 916-5854 fax

## Recommendation on Oral Argument

Oral argument is unlikely to aid the Court's judicial determination. *See* Fed. R. App. P. 34(a)(2)(C).

## Table of Contents

I. The government has not waived sovereign immunity.............. 9

A. The district court rightly found that the independent contractor exception bars Nichols' medical delay claims. ....... 10

1. The independent contractor exception bars Nichols' claims as to delayed care while in Ector County custody. ........................................................................ 11

2. The independent contractor exception bars Nichols' claims as to delayed orthopedic care while at Big Spring........................................................................ 15

B. The district court correctly found that the discretionary function exception bars Nichols' negligence claims as to employment; custody, care, and control; and medical designation and placement. ....................................... 16

1. Nichols' employment-related claims are barred. .......... 17

2. Nichols' custody claims are barred. .............................. 18

3. Nichols' placement claims are barred. .......................... 19

II. Summary judgment was correctly granted on all claims because Nichols lacked expert testimony to establish that a delay in surgery breached any standard of care or caused harm given his infection. ........................................................................ 21

A. The plaintiff lacked expert testimony to establish that the standard of care required earlier surgical intervention. ........................................................................ 21

B. Lay testimony is not sufficient to establish that delay in surgery affected the medical outcome. ................................ 23

# Table of Authorities

Page(s)

## Cases

560 F. App'x 320 (5th Cir. 2014) ........................................ 22
2015 WL 12551111 (W.D. Tex. Mar. 31, 2015) ...................... 23
*Alexander v. United States*,
605 F.2d 828 (5th Cir. 1979) ............................................ 15
*Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*,
541 F.3d 552 (5th Cir. 2008) ............................................ 22
*Ashley v. United States*,
683 F. App'x 333 (5th Cir. 2017) ........................................ 13
*Blank v. United States*,
713 F. App'x 400 (5th Cir. 2018) ........................................ 14
*Burkhart v. Wash. Metro. Area Trans. Auth.*,
112 F.3d 1207 (D.C. Cir. 1997) ......................................... 12
*Campillo v. U.S. Penitentiary Beaumont, Tex.*,
203 F. App'x 555 (5th Cir. 2006) ........................................ 12
*Cosby v. U.S. Marshals Serv.*,
520 F. App'x 819 (11th Cir. 2013) ...................................... 14
*Frazier v. United States*,
No. EP-11-CV-434-DB, 2012 WL 12864991 (W.D. Tex. Dec. 3, 2012) ........................................................ 22, 23
*Hannah v. United States*,
523 F.3d 597 (5th Cir. 2008) ............................................ 21
*Hood v. Phillips*,
554 S.W.2d 160 (Tex. 1977) .............................................. 21
*Huff v. Neal*,
555 F. App'x 289 (5th Cir. 2014) ........................................ 13
*Jelinek v. Casas*,
328 S.W.3d 526 (Tex. 2010) ........................................... 7, 25

*Linkous v. United States*,
142 F.3d 271 (5th Cir. 1998) .................................. 15, 18, 19
*Logue v. United States*,
412 U.S. 521 (1973)......................................................passim
*M.D.C.G. v. United States*,
956 F.3d 762 (5th Cir. 2020) ........................................ 10, 11
*Morgan v. Compugraphic Corp.*,
675 S.W.2d 729 (Tex. 1984)................................................ 24
*OSI, Inc. v. United States*,
285 F.3d 947 (11th Cir. 2002) ...................................... 10, 11
*Overton v. Bazzetta*,
539 U.S. 112 (2003)............................................................ 13
*Patel v. United States*,
398 F. App'x 22 (5th Cir. 2010)........................................... 14
*Poole v. City of Shreveport*,
691 F.3d 624 (5th Cir. 2012) .................................................. 9
*Rodriguez v. Pacificare of Tex., Inc.*,
980 F.2d 1014 (5th Cir.1993) .............................................. 21
*Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*,
851 F.3d 530 (5th Cir. 2017) .................................................. 9
*Sheridan v. United States*,
487 U.S. 392 (1988)................................................................ 9
*Spotts v. United States*,
613 F.3d 559 (5th Cir. 2010) .................................................. 8
*Summers v. United States*,
No. 1:13-CV-138-BL, 2018 WL 6696772 (N.D. Tex. Dec. 20, 2018) ........................................................................ 22
*Sydnes v. United States*,
523 F.3d 1179 (10th Cir. 2008) ........................................... 12
*Taylor v. Fossett*,
320 S.W.3d 570 (Tex. App.—Dallas 2010) ......................... 23
*Thigpen v. United States*,
800 F.2d 393 (4th Cir. 1986) ............................................... 10
*United States v. Muniz*,
374 U.S. 150 (1963)............................................................ 21

*United States v. Orleans*,
425 U.S. 807 (1976) .......... 9, 15
*Williams v. Crawford*,
No. 03-16-00696-CV, 2018 WL 1124306 (Tex. App.—Austin Mar. 2, 2018) .......... 24

## Statutes

28 U.S.C. § 1291 .......... 1
28 U.S.C. § 1346 .......... 15
28 U.S.C. § 2680(a) .......... 10
28 U.S.C. §§ 1331 .......... 1

## Rules

Fed. R. App. P. 34(a)(2)(C) .......... i
Federal Rule of Civil Procedure 12(b)(1) .......... 1, 5, 8

# Jurisdiction

This appeal arises from a final judgment in a civil case filed by Appellant Kevin Nichols (Nichols). The district court dismissed Nichols' negligence claims for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In the alternative, the district court exercised jurisdiction pursuant to 28 U.S.C. § 1331 and granted summary judgment on all claims. The Fifth Circuit has jurisdiction to hear the appeal under 28 U.S.C. § 1291.

# Statement of the Issues

1. Whether the government waived immunity under the Federal Tort Claims Act (FTCA) to allow jurisdiction:
    a. Did the district court correctly find that the third-party contractor exception to the FTCA bars Nichols' claims of medical delay where contractors were responsible for emergent and specialty care?
    b. Did the district court correctly find that the discretionary function exception bars claims challenging BOP's employment, custody, care and control, prisoner designation and placement decisions?
2. Did the district court correctly find that expert testimony is required under Texas law to prove negligence claims for delayed surgery where infection prevented earlier intervention.

# Statement of the Case

## I. General Statement of Facts

In November 2016, Kevin Nichols was incarcerated for violating supervised release by using methamphetamine. *United States v. Nichols*, No. 7:09-cr-00270-DC, ECF Nos. 155, 167 (WD Tex. Nov. 23, 2016). The United States Marshal Service (USMS) contracted with Ector County of Texas to house federal inmates, including Nichols, while they awaited sentencing and transfer to federal prison. ROA.374-75, ROA.386-88, ROA.622-23. According to the intergovernmental agreement, the County was to provide medical care internally and to arrange for emergent or specialty medical care externally. ROA.374-75.

On January 3, 2017, Nichols was involved in a physical fight with another inmate, in which he broke his ankle. ROA.390-92. Ector County transported him to the emergency room, where he was advised that he would need surgery. ROA.8. A consult was set with an outside orthopedic provider for January 19. ROA.11.

Nichols was transferred to the Federal Correctional Institution at Big Spring on January 17. ROA.9. Shortly after arrival, he was examined by a health provider employed by the Bureau of Prisons (BOP), who prioritized his care as an emergency and recommended that he be seen by a local orthopedic specialist

to evaluate for surgery as soon as possible. ROA.11. He was assigned crutches and a wheelchair. ROA.394.

BOP had engaged Correct Care Solutions, a third-party contractor to provide orthopedic specialty care to inmates at Big Spring. ROA.396, ROA.625. Correct Care Solutions arranged for an outside consult with an orthopedic specialist, who examined Nichols on January 24, and recommended surgery. ROA.502.

On February 8, the date of the scheduled surgery, the surgeon diagnosed Nichols with Methicillin-Resistant Staphylococcus Aureus (MRSA) and could not operate on account of the infection. ROA.506, ROA.508, ROA.535-36. Nichols believes that he got MRSA while in Ector County. ROA.530. The surgeon set a second surgery date so that the infection could clear. But at the follow up appointment on February 22, the infection had not cleared, and the surgeon was again unable to perform surgery. ROA.607.

In early May 2017, Nichols' MRSA infection surfaced in his face, and he was admitted to the hospital with facial cellulitis. ROA.508. The attending physician noted that the infection had not cleared and that surgery with an active infection would not be appropriate. *Id.*

Nichols was released from federal custody later in May and underwent surgery thereafter. ROA.14.

## II. Disposition in the Court Below

Nichols filed suit against the United States and GEO (which had assumed the liabilities of Ector County Correction Center or ECCC) for negligence related to the delay in orthopedic surgery. ROA.17-20.

Nichols brought a myriad of claims, which can be categorized in four sets: (i) medical malpractice and delay in providing surgery to Nichols; (ii) negligent hiring, retention, and training of agents, servants, employees, federal correction officers, staff, and medical personnel to care for Nichols; (iii) negligent investigation, selection, screening and retention of ECCC (now owned by GEO Group); and (iv) improper placement of Nichols at FCI Big Spring and failure to transfer him to a facility for specialized care. ROA.17-20. Neither his complaint nor his appeal identifies any one standard of care that was breached and caused damage.

He designated one retained expert: Dr. Marchetti, a life care planner who opined as to Nichol's current condition, abilities, and future care needs. ROA.129-202. Dr. Marchetti did not opine as to the breach of a standard of care committed by the BOP treating providers, nor to proximate cause. *Id.* Nichols also designated his treating providers as non-retained experts, but he failed to timely disclose their opinions or the factual bases for those opinions, and

the district court excluded their testimony. ROA.231-37. He does not challenge that exclusion. *See generally* App. Br.

The United States in turn retained Dr. Brannon Smoot, who opined that the BOP providers did not breach any standard of care and that the extent of Nichols' injury was inevitable given the timing of his infection. ROA.611-21. Dr. Smoot opined that there was no evidence that Nichols would have had a better outcome had he had surgery earlier because surgery was not indicated given his infection. *Id.*

The government moved to dismiss Nichols' general negligence and medical delay claims for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because they fell within the third party contractor and discretionary function exceptions to the FTCA. ROA.358-64. In addition, and in the alternative, the government moved for summary judgment on all claims. Nichols cannot prevail on a negligence claim under Texas law without a medical expert to testify that the lack of surgical intervention breached the standard of care or caused further injury given the persistent infection. ROA.364-368.

The district court granted the government's motion to dismiss. The district court held that the plaintiff's claims concerning Ector County's negligent hiring and retention and failure to train employees, failure to clean facilities, and failure to provide

adequate medical treatment and/or medical malpractice are barred by the independent contractor exception to the FTCA. ROA.730-32. And the Court held that the plaintiff's claims concerning access to external orthopedic and surgery services while at Big Spring are barred by the independent contractor exception because the Bureau of Prisons had contracted with Correct Care Solutions to provide those services. ROA.737.

The district court also held that the following claims are barred by the discretionary function exception to the FTCA: claims regarding employment decisions; policies and procedures; care, custody and control; selecting and retaining contractors; and securing, moving, and designating prisoners. ROA.728-29.

In addition, the district court granted summary judgment to the United States on Nichols' medical malpractice claims and any remaining negligence claims related to healthcare. ROA.739-41. Nichols lacked the requisite expert testimony as to the breach of a standard of care, as well as to causation. The Court concluded that this case is not one "in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." ROA.741. (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010)).

## Summary of the Argument

Kevin Nichols broke his ankle in a prison fight. Over the next several months, he was seen dozens of times by medical providers, all of whom gave appropriate care. He does not allege medical malpractice by any provider. He did not receive surgery before discharge only because he had an infection that cautioned against surgical intervention.

Nichols' complaint and appeal assert a smorgasbord of claims concerning employment, custody and control, and designation of prisoners. But Nichols does not articulate which government actor or entity breached what standard of care nor how that breach caused specific medical harm. Nor does Nichols identify a clear rule that was violated by a government actor. In these circumstances, Nichols has no viable claim against the United States, and the district court carefully and appropriately dismissed his claims:

*First*, the district court correctly found that Nichols' claim for negligent delay in medical treatment is barred by the third-party contractor exception to the FTCA. Ector County was responsible for his emergent medical care, and Correct Care Solutions was responsible for his orthopedic specialty care while at Big Spring.

*Second*, the district court correctly found that decisions concerning employment, custody and control of prisoners, and

placement of prisoners fall within the discretionary function exception to the FTCA. As a result, Nichols' general non-medical claims are barred by that exception.

*Third*, the district court correctly granted summary judgment on all claims because Nichols lacks the expert testimony required under Texas law to prove (i) that the standard of care required surgery earlier; or (ii) that his outcome would have been different but for the alleged breach. Nichols suffered from an infection that persisted throughout his incarceration, and every attending doctor found that surgery was not advised—even in May 2017 just before his discharge. ROA.609.

## Standards

This Court reviews de novo a district court's order dismissing an action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010).

And this Court also reviews *de novo* a district court's grant of summary judgment. *See Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

# Argument

## I. The government has not waived sovereign immunity.

Nichols has the burden to establish jurisdiction. Courts must presume that a suit lies outside a federal court's limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking relief. Settlement Funding, L.L.C. v. Rapid Settlements, Ltd., 851 F.3d 530, 537 (5th Cir. 2017). Nichols alleged jurisdiction under the FTCA, 28 U.S.C. §§ 1346(b); 2671.

The FTCA bestows federal district courts with limited jurisdiction over claims against the United States for money damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission employees of the United States while acting within the scope of his office or employment. Sheridan v. United States, 487 U.S. 392, 398 (1988) (citing 28 U.S.C. § 1346(b)).

Federal courts have no subject matter jurisdiction to review actions falling within an exception to the FTCA. *See United States v. Orleans*, 425 U.S. 807, 813-14 (1976). And the FTCA, "like all waivers of sovereign immunity, must be strictly construed in favor of the sovereign." *Thigpen v. United States*, 800 F.2d 393, 394 (4th Cir. 1986).

### A. The district court rightly found that the independent contractor exception bars Nichols' medical delay claims.

The crux of Nichols' negligence claim against the United States boils down to the timing of orthopedic surgery. This Court lacks jurisdiction over that claim because Ector County was responsible for Nichols' emergent care, and Correct Care Solutions was responsible for his orthopedic care, including surgical consults and appropriate surgical intervention.

The United States has waived immunity only for the negligence of its employees. Under the FTCA, Congress has waived sovereign immunity for acts by an "employee of the government while acting within the scope of that employment." 28 U.S.C. § 1346 (b). It is black letter law that the waiver does not include the negligence of independent contractors. *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). *See also Orleans*, 425 U.S. at 813; *Logue v. United States*, 412 U.S. 521 (1973). As a result, the United States may not be held vicariously liable under the FTCA for the actions—or inaction—of a contractor. *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir. 1979); *Orleans*, 425 U.S. at 814. Courts refer to this exception to the waiver of sovereign immunity under the FTCA as the "independent contractor exception." *Orleans*, 425 U.S. at 814.

### 1. The independent contractor exception bars Nichols' claims as to delayed care while in Ector County custody.

Nichols argues that Ector County jail employees should be considered federal employees under the FTCA. App. Br. at 15. But this issue has been settled for decades. A county housing federal inmates is an independent contractor for purposes of the FTCA. *Logue*, 412 U.S. at 529–30. As the *Logue* court explained, Congress expressly authorized the government to enter into agreements with a county to house federal prisoners and "clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor, with the Government's role limited to the payment of sufficiently high rates to induce the contractor to do a good job." *Id.*

Here, the "contract entered into between the Government and [Ector] County reflects a similar division of responsibility. The county undertakes to provide custody in accordance with the Bureau of Prisons' 'rules and regulations governing the care and custody of persons committed' under the contract." *Id.* at 529.

As in *Logue*, the agreement with Ector County "gives the United States no authority to physically supervise the conduct of the jail's employees" other than occasional inspections. *Id*; ROA.382. The Supreme Court concluded that negligence claims as to county jail employees' conduct are barred by the independent

contractor exception to the FTCA. *Logue*, 412 U.S. 521 at 529–30. Nichols points to nothing unique to the Ector County agreement that would give rise to the kind of daily physical oversight required to invoke FTCA liability. ROA.382. (Ector County IGA —like county agreement in *Logue*—indicating that the jail shall maintain federal detention standards and be subject to inspection).

In addition, the *Linkous* court identified the following factors to determine whether an individual is an employee or an independent contractor:

a. the extent of control which, by the agreement, the master may exercise over the details of the work;

b. whether or not the one employed is engaged in a distinct occupation or business;

c. the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

d. the skill required in the particular occupation;

e. whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

f. the length of time for which the person is employed;

g. the method of payment, whether by the time or by the job;

h. whether or not the work is a part of the regular business of the employer;

i. whether or not the parties believe they are creating the relation of master and servant; and

j. whether the principal is or is not in business.

*Linkous*, 142 F.3d at 276 (citing the Second Restatement of Agency § 220 (1958)).

In this case, every *Linkous* factor weighs in favor of immunity. The agreement does not provide for control by the United States over the daily details of Ector County's operation of its jail, other than for routine inspection. *See generally* ROA.372-84. Ector County is a distinct entity, and its employees are not employees of the United States. *Id.* Nor does the agreement provide for the United States' provision of any instruments, tools, or place of employment for Ector County employees. *Id.* The contract has no end date, *id.* at 4, and the operation of a jail is part of the regular business of a county. Moreover, the contract pay is per diem for each prisoner—not by employee. *Id.* at 11. Any claims related to Nichols' treatment while at ECCC, then, were correctly dismissed for lack of jurisdiction.

Without reference to the seminal case on point, *Logue*, Nichols now argues that the district court incorrectly applied the *Linkous* factors. App. Br. at 15. His arguments are not persuasive. First, he claims that the contract between BOP and Ector County grants BOP "a high degree of control, supervision, and gives direction to Ector County staff." *Id.* That is not true. He points to no provision in the contract that gives BOP any control over Ector County employees. *Id.* There is no provision, for example, that requires

any direct supervision over any daily activity. *Id.* That Ector County staff would transport detainees and were responsible for their care and safety only proves the point. App. Br. at 16. BOP hired Ector County to provide that service—just as the virtually identical arrangement at issue in *Logue*. 412 U.S. at 529–30.

Second, Nichols argues that the district court incorrectly found that Ector County's facility and business were distinct from the BOP or other federal agencies. App. Br. at 16. He points out that the facility was owned by Ector County and later staffed by GEO Group. *Id.* Again, those facts only prove the point. BOP has long contracted with private contractors and counties, including Ector County, to house federal detainees. *See Logue*, 412 U.S. at 529–30. The district court correctly noted that Ector County is distinct from BOP with separate facilities owned by the county—not by the federal government. ROA.736. Like the others, this *Linkous* factor weighs against Nichols' argument that Ector County employees were federal employees for purposes of the FTCA.

The district court correctly found, then, that it lacks jurisdiction over Nichols' claims that he did not receive appropriate care while at ECCC.

### 2. The independent contractor exception bars Nichols' claims as to delayed orthopedic care while at Big Spring.

Similarly, the district court correctly found that the independent contractor exception bars Nichols claims as to delayed surgical intervention while he was at Big Spring from January to May 2017.

The BOP had engaged Correct Care Solutions, a third-party contractor to provide orthopedic specialty care to inmates at Big Spring. ROA.396, ROA.624-25. By contract, Correct Care Solutions would arrange for outpatient orthopedic and surgical care to federal inmates at FCI Big Spring and provide an onsite scheduler to coordinate referrals and appointments. ROA.624-25, ROA.484-88. To the extent there was any delay in Nichols' access to orthopedic care or surgery, those claims are directed to Correct Care Solutions as an independent contractor and do not fall within the waiver of sovereign immunity.

Nichols admits that "CCS employees were trained medical professionals under contract to provide independent medical services to inmates at FCI Big Spring." App. Br. at 17. Nichols now argues that BOP failed to send him to CCS appropriately. *Id.* at 18. But he cites no evidentiary support for that proposition, *id.* His complaint makes clear the BOP provider referred him for specialty care immediately upon arrival at Big Spring. ROA.11. By

contract, Correct Care Solutions arranged for that specialty care. ROA.396, ROA.625. And indeed, Nichols received surgical consults, all of which found that surgery was not appropriate—even just before his discharge.

### B. The district court correctly found that the discretionary function exception bars Nichols' negligence claims as to employment; custody, care, and control; and medical designation and placement.

The discretionary function exception to the FTCA excludes claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); M.D.C.G. v. United States, 956 F.3d 762, 771–72 (5th Cir. 2020). "Whether a government employee's actions fall within the discretionary function exception involves two inquiries: (1) the conduct must be a matter of choice for the acting employee; and (2) the judgment [must be] of the kind that the discretionary function exception was designed to shield. *M.D.C.G.*, 956 F.3d at 771-72. The discretionary function exception does not apply if there is a mandatory rule that the employee must follow. *Id.* at 772.

Importantly, to establish that the exception does *not* apply, it is the plaintiff's burden to prove that there are statutes,

regulations, or agency policies that prescribe a specific course of action. OSI, Inc. v. United States, 285 F.3d 947, 952 n.2 (11th Cir. 2002). Nichols cannot meet that burden because Nichols does not identify any policy that has been ignored. *See generally* ROA.8-22; App. Br.

**1. Nichols' employment-related claims are barred.**

The district court correctly found that Nichols did not meet his burden to point to any statute, regulation, or agency policy that was violated by any employment decision. ROA.729.

Nichols now argues on appeal that the discretionary function exception could not possibly protect the failure to provide necessary medical care. App. Br. at 9. But Nichols points to no *hiring, retention, or training* decision that allegedly led to any delay in care. *Id.* As a result, there is no employment decision to evaluate for lack of discretion, and he cannot meet his burden to demonstrate that the district court has jurisdiction over any employment-related claim.

And the district court correctly found that employment choices are a matter of policy. The Fifth Circuit has held that "federal employees' supervision of subordinates involves the kind of judgment that the discretionary function exception was meant to protect" *M.D.C.G.*, 956 F.3d at 772. It is well established throughout the Circuits that a federal agency's decisions as to

hiring, training, retention, or supervision of its employees are susceptible to choice and policy analysis protected by the discretionary function exception. *See, e.g.*, *Burkhart v. Wash. Metro. Area Trans. Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); Sydnes v. United States, 523 F.3d 1179, 1185-86 (10th Cir. 2008).

**2. Nichols' custody claims are barred.**

The same is true of Nichols claims concerning custody and control. The district court rightly found that the BOP has discretion in the exercise of its duty to provide safekeeping, custody and care of the incarcerated. ROA.730-31; *Campillo v. U.S. Penitentiary Beaumont, Tex.*, 203 F. App'x 555, 557 (5th Cir. 2006). Again, Nichols did not point to a rule that was violated. *Id.*

Nichols now argues that the prison staff should have ensured that he received surgery. App. Br. at 10. But here again, he does not point to a particular individual that made a decision that was not discretionary. *Id.* There is therefore no decision to evaluate for lack of discretion. *Id.* And he cannot meet his burden to establish that this prong of the discretionary function exception does not apply.

As to the second prong, the district court rightly concluded that decisions concerning BOP custody and control are subject to policy analysis such that they are protected by the discretionary function exception to the FTCA. ROA.730-31. As the Supreme Court has

recognized, "We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means of accomplishing them." *Overton v. Bazzetta*, 539 U.S. 112, 126 (2003).

**3. Nichols' placement claims are barred.**

*Third,* and finally, Nichols argues that the BOP negligently secured and moved him, assigned him to a facility inadequate to meet his medical needs and failed to make a BOP medical designation. App. Br. at 11. Here again, Nichols points to no mandatory rule that was violated. Nor does Nichols identify a particular decision that was not discretionary.

The district court correctly found that choices concerning Nichols' placement are protected by the discretionary function exception. Order at 13. The Fifth Circuit has repeatedly held that the placement and movement of an inmate is a matter of choice that involves policy decisions designed to be protected by the exception. *Ashley v. United States*, 683 F. App'x 333, 333 (5th Cir. 2017) (summarily affirming finding that discretionary function exception applied to BOP's placement of inmate in area of prison that did not have air conditioning); *see also Huff v. Neal*, 555 F. App'x 289, 298-99 (5th Cir. 2014).

This is especially true of medical designations, including decisions to place an inmate in a facility without access to specialty care. *See Blank v. United States*, 713 F. App'x 400, 401 (5th Cir. 2018) (affirming dismissal because "the medical classification and designation of a prisoner to a particular prison facility involves elements of judgment or choice so as to bring it within the purview of the discretionary function exception to the FTCA").

And the transfer of a patient—or the failure to transfer a patient—also falls within the exception. *Patel v. United States*, 398 F. App'x 22, 27-29 (5th Cir. 2010) (concluding that the discretionary function exception barred federal inmate's claim that BOP's decisions to repeatedly transfer him from prison to prison caused him to be denied essential medical care).

Other Circuits have reached similar conclusions. For example, where a plaintiff alleged that USMS was negligent in transporting her while she had a medical condition, failed to follow a doctor's recommended course of treatment, and transferred her to various facilities instead of allowing her to remain at one until her medical treatment was complete, the appellate court found that the discretionary function exception barred her claim and affirmed dismissal. *Cosby v. U.S. Marshals Serv.*, 520 F. App'x 819, 821 (11th Cir. 2013).

## II. Summary judgment was correctly granted on all claims because Nichols lacked expert testimony to establish that a delay in surgery breached any standard of care or caused harm given his infection.

Liability under the FTCA depends "upon whether a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963). As the conduct at issue in this case occurred in Texas, the Court looks to Texas law.

### A. The plaintiff lacked expert testimony to establish that the standard of care required earlier surgical intervention.

To prove a claim for negligence related to medical care in Texas, a plaintiff must produce expert testimony to prove (i) the standard of care at issue; (ii) if and how medical professionals breached that standard of care; and (iii) that the breach proximately caused more injury than the plaintiff would have experienced in any event but for the breach. *Hannah v. United States*, 523 F.3d 597, 601-02 (5th Cir. 2008); *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1020 (5th Cir.1993) (same).

"Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required to meet this burden of proof." *Hannah*, 523 F.3d at 601 (quoting *Hood v. Phillips*, 554 S.W.2d 160, 165-66 (Tex. 1977)).

Nichols now claims that he does not assert medical malpractice claims and therefore these rules do not apply. App. Br. at 20-21. Under Texas law, however, *all* health care liability claims are subject to the stricter pleading and proof requirements. *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 561 (5th Cir. 2008). To determine whether a claim is a "health care liability claim," the court must examine the underlying nature of the claim to determine whether the omissions alleged are an "inseparable part of the rendition of health care services." *Royal Surplus*, 541 F.3d at 561. A plaintiff cannot avoid these requirements by "artfully pleading" around medical negligence. *Id.* Here, every one of Nichols' allegations relates to his medical treatment—or the alleged lack thereof—and they therefore constitute health care liability claims under Texas law.

In any event, under Texas law, expert testimony is required whenever alleged negligence is "of such a nature as not to be within the experience of the layman." *Summers v. United States*, No. 1:13-CV-138-BL, 2018 WL 6696772, at *5 (N.D. Tex. Dec. 20, 2018). Nichols alleges that he should have received surgery between February 2017 and May 2017. App. Br. 17. But Nichols suffered from a MRSA infection that persisted until May, when a treating provider reported that surgery was not indicated because of the infection. ROA.609. Nichols does not introduce any contrary

opinion as to the standard of care or its alleged breach. Nor does he contend that the infection was not properly treated. App. Br. 20.

In these circumstances, the district court correctly found that Nichols could not establish the breach of a standard of care without expert testimony. The alleged failure to provide surgery when there is an active infection is exactly the type of claim for which expert testimony is required under Texas law. *Frazier*, 2012 WL 12864991, at *1 (granting summary judgment for the government where plaintiff did not designate expert testimony that the government breached the standard of care by failing to provide surgery); *Cooper v. United States*, No. SA-13-CA-0507-FB, 2015 WL 12551111, at *8 (W.D. Tex. Mar. 31, 2015) (same); *Taylor v. Fossett*, 320 S.W.3d 570, 577 (Tex. App.—Dallas 2010) (reversing and dismissing case because expert report presented no factual basis for a conclusion that the doctor's failure to examine the plaintiff's wound, properly diagnose MRSA, and begin treatment, caused the plaintiff's injuries). And the district court therefore correctly granted summary judgment on this element.

### B. Lay testimony is not sufficient to establish that delay in surgery affected the medical outcome.

Finally, summary judgment was appropriately granted on causation as to *all* claims for lack of expert testimony.

Under Texas law, the plaintiff bears the burden to prove that negligence caused an injury. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex. 1984). In a personal-injury case, the plaintiff must present expert testimony to establish causation as to medical conditions outside the common knowledge and experience of the factfinder. *Williams v. Crawford*, No. 03-16-00696-CV, 2018 WL 1124306, at *4 (Tex. App.—Austin Mar. 2, 2018).

Nichols claims that lay testimony would be sufficient in this case to "draw the connection between Mr. Nichols' fractured ankle, for which he received no surgical treatment, and the continued injury to which he still suffers today." App. Br. at 23. It is true that Nichols suffered pain because he broke his ankle. But Nichols does not allege that the government caused his broken bone. Rather, he argues that he suffered *additional harm* because he did not have earlier surgical intervention. As to that alleged injury, causation is not obvious.

Lay testimony is not sufficient to prove that an earlier surgery would have resulted in a different outcome where Nichols had an ongoing infection. The government's expert, Dr. Smoot, offered an unrebutted expert opinion that the extent of Nichol's injury (malunion of the ankle) was inevitable given the infection. ROA.611-21. Nichols would have needed expert testimony to

identify the point at which surgery should have been performed—not an easy calculus, given his original swelling and then his wound and infection. Then, the expert would need to delineate to a reasonable degree of medical certainty how the outcome would have been different had he undergone surgery at that time. Without that testimony (and with expert testimony presented from the United States to the contrary), the district court correctly found that Nichols cannot prevail on this element. *Jelinek*, 328 S.W.3d at 534 (expert testimony required to establish causal link between lapse in course of antibiotic treatment and injury to plaintiff).

## Conclusion

For all these reasons, this Court should affirm the judgment of the district court.

Respectfully submitted,

Ashley C. Hoff
United States Attorney

*<u>/s/ Kristina S. Baehr</u>*
By: Kristina S. Baehr
Assistant United States Attorney

## Certificate of Service

I certify that on October 20, 2021, I filed this brief through this Court's electronic case-filing system, which will serve it on all registered counsel.

*/s/ Kristina S. Baehr*
Kristina S. Baehr
Assistant United States Attorney

# Certificate of Compliance

I certify that:

(1) this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,148 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

(2) this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in size 14 Century Schoolbook font.

Dated: October 20, 2021

*/s/ Kristina S. Baehr*
Kristina S. Baehr
Assistant United States Attorney